UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-MBD-

IN RE: HEIDI K. ERICKSON
  *Petitioner*

VERIFIED PETITION

1    I Heidi K. Erickson, Petitioner, *pro se*, do certify that the attached is being filed here today in good faith, seeking leave to file the attached Complaint.

2    I am under Orders issued on August 16th, 2004 by Judge Woodlock of this Court to file herewith his Orders as attached hereto.

3    Pursuant to said Orders I have executed this Petition under oath and file this entitled verified.

4    Pursuant to said Order this Petition is to set forth that I have good cause and am acting in good faith to file said attached Complaint, as is the fact and truth.

5    Said Complaint is filed in this Honorable Court in part pursuant to the jurisdiction of diversity since all the parties except two live in different states. The causes of this action include federal question(s) and state law claims. I have invoked all jurisdiction possible and permissible and with my dyslexic and pro se writing have tried to include where possible all state claims.

6    Said Complaint is filed noting time is of the essence as I have been informed the Defendant's intent is to destroy the tape recordings of the CFA Executive Board meetings after the secretary has completed a unusual and expedited transcription thereof as the Board expects this Complaint. The said tapes for which the Defendant actions have been unmistakenly recorded as proof therein of the basis of this Complaint. The taped CFA Board meetings are part proof and evidence of the claims made herein and necessary to be preserved.

7    Therefore pending review of this Petition Petitioner will submit a Motion to Preserve Tapes Made of Executive Board Meeting Oct. 2003 and Oct. 2004 if necessary and asks herein for all relief necessary to preserve said evidence.

Respectfully submitted by,
Heidi K. Erickson, *pro se*
November 30th, 2004

By signature hereinabove I attest that the information herein is true under the pains and penalties of perjury.

# UNITED STATES DISTRICT COURT

District of _____

_H. K. ERICKSON_
Plaintiff

v.

_C.F.A. et al._
Defendant

**APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEES AND AFFIDAVIT**

CASE NUMBER: _____

I, _H. K. ERICKSON_ declare that I am the (check appropriate box)

☑ petitioner/plaintiff/movant          ☐ other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?          ☐ Yes          ☑ No          (If "No," go to Part 2)

   If "Yes," state the place of your incarceration _____

   Are you employed at the institution? _____ Do you receive any payment from the _____

   Attach a ledger sheet from the institution(s) of your incarceration showing at least the past six months' transactions.

2. Are you currently employed?          ☐ Yes          ☑ No

   a.   If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.

   b.   If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.

3. In the past 12 twelve months have you received any money from any of the following sources?

   | | | |
   |---|---|---|
   | a.   Business, profession or other self-employment | ☐ Yes | ☑ No |
   | b.   Rent payments, interest or dividends | ☐ Yes | ☑ No |
   | c.   Pensions, annuities or life insurance payments | ☑ Yes | ☑ No    7 ENEDC |
   | d.   Disability or workers compensation payments | ☑ Yes | ☑ No |
   | e.   Gifts or inheritances | ☐ Yes | ☑ No |
   | f.   Any other sources | ☐ Yes | ☑ No |

If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive.

RECIEVING aprox. $300.ºº in Bimonthly installment of $150.ºº ea. from State Commonwealth of Mass under the programe EAEDC emerg. aid to Disabled persons & children.

4. Do you have **any** cash or checking or savings accounts?    ☐ Yes    ☑ No

   If "Yes," state the total amount. _____

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other
   thing of value?    ☑ Yes    ☐ No

   If "Yes," describe the property and state its value.

   Property:   1974 off Road Dodge.
   Value:      undeterminable

6. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.    Self

I declare under penalty of perjury that the above information is true and correct.

_12/1/04_
Date

_____
Signature of Applicant

**NOTICE TO PRISONER:** A Prisoner seeking to proceed IFP shall submit an affidavit stating all assets.  In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEIDI K. ERICKSON,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )
                                      )   C.A. No. 04-10629-DPW
DAVID SOMERS, et al.,                 )
                                      )
                Defendants.           )

ORDER ON PLAINTIFF'S MOTION FOR
CLARIFICATION AND RESPONSE TO ORDER TO SHOW CAUSE

On May 4, 2004, I denied plaintiff's motion for
reconsideration of the denial of her application for a temporary
restraining order and dismissed this action as lacking any
arguable basis in law.  See Docket No. 17.  I also ordered
plaintiff to demonstrate good cause within 35 days (1) why her in
forma pauperis status should not be revoked and why she should
not be sanctioned in the amount of at least $150.00; and (2) why
she should not be sanctioned or enjoined from further filings in
this Court absent leave of Court.

Forty-one days later, on June 14, 2004, Erickson filed a
"Verified Motion or, In the Alternative, Request For
Clarification On Orders Issued on May 5th 2004 [sic]."[1]  In her
motion, plaintiff claims that she is "profoundly confused why
this Honorable Court keeps misstating issues of facts [sic]
despite the evidence presented attached as exhibits in her

_____

[1] I have considered plaintiff's response despite the fact
that it is untimely.

pleadings unless there is discrimination, biased [sic] and or plain error." Motion, p.1. Rather than responding to my concerns about her history of filing frivolous actions in this Court, the entirety of the motion is devoted to a re-argument of her motion for injunctive relief and a statement of the reasons why she disagrees with this Court's dismissal of her claims. Motion ¶¶ 2-3, 7-9, 11-12. The motion is replete with specious accusations about this Court's alleged bias towards her and its alleged improper handling of her claims in this and other actions filed by her. Id. at ¶¶ 1-2, 7, 11-12.[2] Erickson fails to address this Court's expressed concern that she is abusing the federal judicial process. An order enjoining her from filing actions in this Court without prior approval of a judicial officer is necessary to stop her continued abuse of the process of this Court.

## ANALYSIS

I.   Plaintiff's In Forma Pauperis Status

The benefit of proceeding in forma pauperis is granted as a privilege and not as a matter of right. Weller v. Dickson, 314 F.2d 598, 600 (9th Cir. 1963). In enacting the in forma pauperis statute, Congress recognized that unlike a paying litigant, a litigant whose filing fees and court costs are assumed by the

---

[2]On June 21, 2004, plaintiff filed a "motion" attempting to correct typographical errors in her response. Nothing in that motion affects the substance of her response.

2

public lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989) (interpreting former § 1915(d)). Thus, the <u>in forma pauperis</u> statute is designed to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit. <u>Id.</u> at 327.[1]

If a court determines that a litigant's allegation of poverty is untrue, the court must dismiss the action with prejudice. 28 U.S.C. § 1915(e)(2)(A) (stating that the court "shall" dismiss if allegation of poverty is untrue); <u>see</u> <u>Romesburg v. Trickey</u>, 908 F.2d 258, 260 (8ᵗʰ Cir. 1990) (affirming dismissal with prejudice for failing, in bad faith, to include certain financial information, interpreting former section 1915(d)); <u>Atwell v. Reese</u>, 530 F. Supp. 314, 315 (D. Ala.

---

[1]A litigant seeking <u>in forma pauperis</u> status is not required to demonstrate absolute destitution and is not required to forego the necessities of life in order to pay the filing fee. <u>Adkins v. E.I. DuPont de Nemours & Co., Inc.</u>, 335 U.S. 331, 339 (1948). Conversely, however, if a litigant can afford the basic necessities of life, <u>in forma pauperis</u> status is not mandated. <u>Diaz-Ojeda v. Toledo</u>, 54 F.3d 764, 1995 WL 311724 at * 1 (1ˢᵗ Cir. May 22, 1995) (affirming; payment of filing fee would not deprive plaintiff of the necessities of life); <u>cf.</u> <u>In re Stump</u>, 449 F.2d 1297, 1298 (1ˢᵗ Cir. 1971) (stating that if an applicant has the wherewithal to pay court costs, or some part thereof, without depriving himself and his dependents (if any there be) of the necessities of life, then he should be required, to "put his money where his mouth is.").

1981) (same; dismissing). Cf. Moreland v. Hu-Friedy Mfg., Co., No. 95 C 4373, 1997 WL 543066, at *5 (N.D. Ill. Aug. 29, 1997) (plaintiff sanctioned $150.00 for filing intentionally false financial affidavit).

Here, plaintiff was directed to explain to the Court the obvious discrepancy between the assertions of financial indigence contained in her application to proceed without prepayment of fees in this action and the affidavit submitted with her motion for injunctive relief which stated that she had spent approximately $1600.00 on improvements to her apartment. Her admission that she was able to expend these funds was inconsistent with the statements in her in forma pauperis application, signed under penalty of perjury, that she was unemployed, had less than $400.00 in a bank account, and could not afford to pay the $150.00 filing fee for this action. Application, p. 1-2. Plaintiff's response to my concerns about her financial indigence only repeats that she spent $1600 on the apartment and is thus inapposite.[4]

Erickson failed to meaningfully respond to the order

---

[4]Only one paragraph in the plaintiff's motion remotely addresses the Court's concerns about plaintiff's financial indigence. After claiming that her physical labor alone is worth at least $1500.00, but is more properly valued at $25,000, Erickson states that she purchased "materials in excess of $100.00 for direct purchases and others replaceable at approximately $500 and a washer-dryer at nearly $1,000.00." Motion ¶ 10.

4

directing her to demonstrate why her _in forma pauperis_ status should not be revoked. However, I am unable on the present record to make a determination whether plaintiff's assertions of financial indigence are true. Because I will enjoin her from filing new filings absent leave of Court, I will not revoke plaintiff's _in forma pauperis_ status in this action even though it is well within my authority to do so. See _Assadd-Falts v. Univ. of South Carolina_, 971 F. Supp. 985, 991 (D. S.C. 1997) (revoking plaintiff's IFP status for failing to demonstrate good cause why it should not be revoked). A further inquiry into plaintiff's indigency status will only prolong proceedings in this Court; in the future, plaintiff's filings will be subject to oversight by injunction in any event.

II.   Plaintiff Shall Be Enjoined From Filing New
      Actions In This Court Absent Leave of Court

As discussed in my May 4, 2004 Memorandum and Order, a district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation. _Elbery v. Louison_, 201 F.3d 427, 1999 WL 1295871, at *2 (1st Cir. Dec. 17, 1999) (per curiam) (citing _Cok v. Family Court of Rhode Island_, 985 F.2d 32, 34 (1st Cir. 1999)). The repeated filing of factually and legally deficient actions may be considered a burden on the Court's time and resources warranting injunctive relief. See _Castro v. United States_, 775 F.2d 399, 408 (1st Cir. 1985) (per curiam) ("[I]n extreme circumstances involving

5

groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate."); _accord_ _Gordon v. Dep't of Justice_, 558 F.2d 618, 618 (1st Cir. 1977) (per curiam) (same); _Pavilonis v. King_, 626 F.2d 1075, 1078 (1st Cir. 1980) (same).

A district court also has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior.[5] _See_ _Chambers v. Nasco, Inc._, 501 U.S. 32, 46-50 (1991); _accord_ _United States v. Kouri-Perez_, 187 F.3d 1, 6-8 (1st Cir. 1999) (same); _John's Insulation, Inc. v. L. Addison & Assocs._, 156 F.3d 101, 109 (1st Cir. 1998) (district court did not abuse its discretion in ordering dismissal of complaint and default judgment as a sanction for plaintiff's protracted delay and repeated violation of court's order under inherent powers

---

[5] Vexatious conduct occurs where a party's actions are frivolous, unreasonable or without foundation. _Local 285 Serv._ _Employees Intern'tl v. Nontuck Res. Assoc._, 64 F.3d 735, 737 (1st Cir. 1995); _accord_ _Alexander_, 121 F.3d at 315-316 (sanction appropriate when objectively unreasonable litigation-multiplying conduct continues despite a warning to desist). Subjective bad intent is not necessary to justify an award for vexatious conduct, _Local 285 Serv. Employees Intern'tl_, 64 F.3d at 737, and bad-faith behavior in this context is equivalent to bringing suit on a frivolous claim, meaning a claim that no reasonable person could suppose to have any merit. _Lee v. Clinton_, 209 F.3d 1025, 1026 (7th Cir. 2000).

rather than Rule 41); <u>Alexander v. United States</u>, 121 F.3d 312, 315-316 (7th Cir. 1997) (sanctioning inmate in the amount of $500 pursuant to court's inherent authority for repetitious, meritless litigation). Thus, where a party's behavior is an abuse of the processes for the administration of justice, a court may issue an order to the Clerk of Court that the Clerk not file documents presented to the Clerk by that party absent leave by a judge of the Court. <u>Castro</u>, 775 F.2d at 408 (per curiam); <u>Gordon</u>, 558 F.2d at 618 (per curiam); <u>Pavilonis</u>, 626 F.2d at 1078.

Here, as discussed in the May 4, 2004 Memorandum and Order, Erickson has vexatiously filed meritless action after meritless action in this Court. A review of Erickson's litigation history indicates that she has filed at least eighteen actions in this court in the past decade.[6] In nearly all of these cases, she has

---

[6] <u>See, e.g.</u>, <u>Erickson v. Commonwealth</u>, C.A. No. 94-10354-RWZ (granting respondent's motion to dismiss); <u>Erickson v. Harvard Univ.</u>, C.A. No. 94-12472-RGS (granting defendant's motion to dismiss), <u>appeal dismissed</u>, No. 95-1335 (1st Cir. July 5, 1995); <u>Erickson v. Harvard Univ., et al.</u>, C.A. No. 95-10698-PBS (dismissing action removed by defendants; Erickson enjoined from filing future suits against defendants) <u>appeal dismissed</u>, No. 95-2368 (1st Cir. Apr. 30, 1996); <u>Erickson v. DeSouza</u>, C.A. No. 95-10863-JLT (remanding to Middlesex Superior Court); <u>Erickson v. Mass. Committee for Public Counsel Servs., et al.</u>, C.A. No. 95-12575-JLT (dismissing under former § 1915(d)); <u>Maziarz, et al. v. Erickson</u>, C.A. No. 96-10719-MLW (remanding); <u>Erickson v. Cambridge/Somerville Elder Servs.</u>, C.A. No. 00-12523-EFH (§ 2254 petition dismissed with prejudice); <u>Viola v. Erickson</u>, C.A. No. 01-11135-DPW (remanding); <u>Erickson v. Nahigan, et al.</u>, C.A. No. 02-10918-JLT (remanding, plaintiff advised of Court's authority to enjoin); <u>Erickson v. Bersani, et al.</u>, C.A. No. 02-11580-JLT (plaintiff directed to demonstrate good cause why she should not be enjoined; action dismissed under § 1915(e)(2)); <u>Erickson v.</u>

asserted an alleged need for emergency relief, requiring this Court to divert resources to advance and decide (and dismiss) her claims out of order.

Indeed, most recently, Erickson filed three new actions in this Court in the span of one week.[7] In each action, Erickson asserted an alleged need for immediate, injunctive relief. On at least one occasion, not only was injunctive relief simply not warranted, no good-faith basis existed for the contention that such relief was needed.

In Erickson v. Commonwealth, et al., C.A. No. 04-11607-DPW, Erickson filed a complaint and a motion for a temporary

---

Kovacev, C.A. No. 03-10438-DPW (remanding; attempt to remove housing court proceedings to this Court); Erickson v. Administrative Office, et al., C.A. No. 03-10460-NMG (dismissing ADA claims based on alleged discriminatory treatment in state court proceedings); Erickson v. Reilly, et al., C.A. No. 03-10785-RCL (pending; civil rights claims based on seizure of cats); Erickson v. Watertown Health Dep't, et al., C.A. No. 03-10999-RCL (removed action administratively dismissed on abstention grounds; civil rights claims based on events surrounding seizure of cats); Erickson v. Somers, C.A. No. 04-10629-DPW (dismissing discrimination claims based on alleged dissemination of information about plaintiff's notoriety to prospective landlords), appeal filed, No. 04-1594; Erickson v. Commonwealth, C.A. No. 04-11607-DPW (dismissing claims based on alleged euthanasia of cats); Erickson v. CPCS, et al., C.A. No. 04-11659-RCL (claims about alleged ineffective legal assistance at state criminal hearings for animal cruelty); Erickson v. State Racing Comn'n, et al., C.A. No. 04-11660-WGY (civil rights claims based on denial of stable employee license).

[7]Erickson v. Commonwealth, C.A. No. 04-11607-DPW (filed 7/19/04); Erickson v. CPCS, et al., C.A. No. 04-11659-RCL (filed 7/26/04); Erickson v. State Racing Comn'n, et al., C.A. No. 04-11660-WGY (filed 7/26/04).

8

restraining order at 4:40pm. In essence, she claimed that relief was needed in the next 20 minutes, before the Clerk's Office closed for the day. See C.A. No. 04-11607-DPW Docket. However, to the contrary, a declaration submitted by the defendants demonstrated that no such emergency existed, prompting the defendants to file a motion seeking an order similar to the one contemplated here. After preliminary injunction briefing by the parties addressed to the merits, I have dismissed that case today finding it without an arguable in law.

It is painfully apparent that an order enjoining Erickson is necessary to avoid her abuse of this Court's process. Castro, 775 F.2d at 408 (per curiam); Gordon, 558 F.2d at 618 (per curiam); Pavilonis, 626 F.2d at 1078; Chambers, 501 U.S. at 46-50 (1991); Kouri-Perez, 187 F.3d at 6-8. Nothing in Erickson's response provides any basis for not issuing such an order. Indeed, the contentious and belligerent tone of that response and Erickson's continuing pattern of filing frivolous actions with false claims of immediate injury demanding instantaneous injunctive relief more than demonstrate that such an order has been long overdue.

## CONCLUSION

ACCORDINGLY, Erickson's motion for clarification is DENIED, and I find she has failed to demonstrate good cause why she should not be enjoined by this Court. It is hereby ORDERED that:

9

(1) If Heidi Erickson undertakes to file any additional papers in this Court, other than in an action already pending in this Court or in order to perfect an appeal from this Memorandum and Order, she shall file a written petition seeking leave to do so. The petition must contain a copy of this Memorandum and Order, together with the papers sought to be filed, and a certification under oath that there is a good-faith basis for their filing. The Clerk of Court shall accept the documents, mark them received, and forward them, for action on the petition, to a judge of this Court authorized to act on matters on the Miscellaneous Business Docket of the Court; and

(2) A copy of this Memorandum and Order shall be distributed to each District Judge's session.

(3) Erickson is specifically instructed that any failure to comply with these requirements will result in sanctions which may include monetary fines.

SO ORDERED.

Dated at Boston, Massachusetts, this _16th_ day of _August_, 2004.

_Douglas P. Woodlock_
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEIDI K. ERICKSON
*Plaintiff*

CIVIL ACTION NO 04-

VS.

VERIFIED COMPLAINT

CAT FANCIERS ASSOCIATION (CFA) ET AL
Pam Delabar, President Board of Directors,
Thomas Dent, Director
Fred Jaccobberger, Legal Counsel
Linda Berg, Chairman Animal Welfare Committee
George Eigenhauser, Jr., Member Animal Welfare Committee
*Defendants*

## PARTIES

1. Heidi K. Erickson "Plaintiff" is a citizen of the US, resident of the Commonwealth of Massachusetts, 3rd generation member of the Cat Fanciers Association (CFA), member CFA Persian Breed Counsel Solid Color Division, a voluntary member in CFA's Cattery Environment Program with an award of "Excellence". Plaintiff's family inherited cattery named Silver Circle a CFA registered Cattery since 1947. Plaintiff is disabled (suffering from epilepsy and dyslexia), files this action in diversity.

2. Cat Fanciers Association (CFA) is a non-profit agency (receives benefits of state tax exemptions status in New Jersey) duly registered as a Corporation in the State of New Jersey and in New York the Board meetings are incorporated under the State of New York Membership Corporation Law, is made up of members sharing an interest in the breeding, registration and exhibition of purebred cats and is the largest agency that registers and maintains records on purebred cats, breeders, licenses exhibition events, maintains administrative functions of the Winn Feline Foundation, CFA Legislative Foundation and other various Funds. CFA's principle place of business is located at 1805 Atlantic Avenue, Manasquan, NJ 08736. CFA directs its Executive Director to act on its behalf.

3. Pam Delabar, President of CFA is a resident of 7131 Oak Drive, San Antonio, TX 78256 duly elected by the CFA members at large and directs and/or adjudicates over the CFA Board meetings and its members. "Delabar" at all material times has a duty to all members of CFA, CFA Board, CFA Office and Committees, named a Defendant herein for her professional and personal capacity as and voting member of the CFA Board; ultimately responsible for the evidence distributed to and decisions of the CFA Board.

4. Linda Berg, Chairman of the Animal Welfare Committee of the CFA. "Berg" is a resident of 3091 202 Court East, Prior Lake, MN 55372 and named a Defendant herein for her professional and personal capacity as CFA Officer and voting member of the CFA Board.

5. Thomas Dent, Executive Director of the CFA and a resident of New Jersey duly appointed by the CFA Board. "Dent" named a Defendant herein for his professional and personal capacity

1

as an employee and a CFA Officer and voting member of the CFA Board; as Executive Director Dent is responsible for the supervision, training and actions of his employees and agents (not all inclusive to the staff of the CFA trade magazine CFA Almanac), and the day to day operations of the CFA Central Office and agents. At all material times herein this Complaint Dent has a duty, is responsible and duly appointed by Defendant CFA.

6. George Eigenhauser, CFA Welfare Committee Member, CFA Officer and voting member of the CFA Board, is a resident of San Diego, CA and named a Defendant herein for his professional and personal capacity as a CFA Officer, Board Member and CFA Animal Welfare Committee Member and Investigator. Hereinafter "Eigenhauser".

7. Fred Jacobberger, CFA Officer, and Legal Counsel and voting member of the CFA Board is a resident of 2701 Overlook Drive, Bloomington, MN 55420. "Jacobberger" named a Defendant infor his professional and personal capacity as CFA Officer, and Legal Counsel.

8. Plaintiff reserves the right to name all CFA Officers and voting members of the Board and all the Animal Welfare Committee Members not mentioned hereinabove.

9. All Defendants, their employees and agents during all relevant times hereto violated the laws of the United States, New Jersey, Massachusetts and New York separately and collectively as well as their state of residence of CA, TX and MN. Acted to unlawfully discriminate against Plaintiff due to her disability in violation of the Americans with Disabilities Act, New Jersey, New York and Massachusetts Laws against discrimination, while doing so discriminately denied Plaintiff membership privileges and benefits, services and associations and "material fairness" by suspending and expelling Plaintiff from a lifetime of membership in the CFA.

10. All the Defendants knowingly, negligently and maliciously acted to commit various torts upon Plaintiff separately and collectively condoned and encouraged other CFA agents and employees including Board members to act with unlawful discrimination and without fairness to deprive Plaintiff membership and services of CFA, to act unfairly and to commit misconduct made to maliciously harm Plaintiff's reputation, physically and knowingly injure her, humiliate, embarrass and scorn Plaintiff amongst the members and to exclude her unfairly, capriciously, against it's own policies, practices and procedures from membership and services in an unfair, biased and prejudicial manner.

11. All the above named Defendants are also known collectively as the "CFA", "CFA Officers" and/or the "CFA Board" and/or the "CFA Inc.". The acts of the above-mentioned Defendants, individually and through their agents, servants and employees, and each of them, were clearly supported by the power, property and prestige of the Corporation, which imbued them with the power, and prestige of officials acting on behalf of the members of CFA.

## JURISDICTION

This Honorable Court has subject matter jurisdiction of this action in diversity, there is no jurisdictional requirement as to the amount of damages claimed and as to counts in this Complaint which are based on state laws are a basis for invoking the supplementary jurisdiction of this Court pursuant to diversity, 28 USC sec 1367a, and 42 USC 1441.

The federal question in this action arises under the Americans with Disabilities Act 42 USC 12101 et seq. P.L. 101-336, 104 Stat. 328 (1992), 43 USC 1981(b).

Diversity of citizenship is invoked under 28 USC 1332 as all parties state residences are different. Other jurisdictional considerations arising from the state laws related to discrimination and/or fairness in business and/or private agency actions and requests for judicial review for fairness Plaintiff leaves the decision to this Honorable to apply either or all state laws applicable in New Jersey, New York, and Massachusetts, TX, MN, and CA; in addition to Article 14 & 15 of the Massachusetts Constitution and the and those similarly related statutes in NY, NJ, TX, MN, and CA.

Plaintiff believes the law of New Jersey takes precedence do to the fact that the CFA, Inc. seal on all official CFA papers is the seal of the State of New Jersey. Therefore jurisdiction in diversity includes the New Jersey Law Against Discrimination N.J.S.A. 10:5- 1 et seq. ("LAD"), or the Massachusetts Declaration of Rights, Massachusetts Civil Rights Act, Massachusetts Equal Rights Act and MGL Ch 151B, CH 272 sec 92A, and 98 if applicable.

Additional federal questions raised herein surround whether the Defendants not all inclusive to their non-profit status and recipient statutus of tax exemptions are benefits related given to them by the state therefore for the purpose of this action the Defendants are state actors and for the purposes of deprivations to the First Amendment (regarding deprivation of Free Association), the Fourteenth Amendment (regarding deprivations of due process, life liberty and the pursuit of happiness) to the United States Constitution invoking other claims pursuant to 28 USC 1983.

## OTHER JURISDICTIONAL CONSIDERATIONS

PLAINTIFF IS A QUALIFIED DISABLED PERSON

1. Plaintiff is a person who is disabled according to the definitions promulgated under the ADA and who is otherwise qualified. Plaintiff's disability has been documented since she was 5, reevaluated at Harvard University in 1992 and determined disabled requiring accommodations; and again by the US Department of Education in 1993, again by the US Department of Social Services in 1994; re-evaluated in 2002, 2003 by Dr. Fraser who is employed by the Commonwealth of Massachusetts to make disability determinations.

2. In the Spring 2004 by Affidavit (Exhibit )and in late the Summer to investigators of the Commonwealth and with the Cambridge Human Rights Commission Dr. Fraser recommended the necessity of accommodations for Plaintiff consistent with those Plaintiff requested of the Defendants "reducing stress that producing triggers to harmful seizures", "elimination of deadlines," "extension of time to complete projects" etc.

3. Plaintiff states that the Defendants individually and collectively refused to grant her a reasonable accommodation and that by their actions to deny her the accommodation she requested (continuance to 2005) discriminated against her in depriving her CFA services, membership and benefits and a right to be heard on Appeal in violation of the intentions of Congress as including by ADA and the Legislation of the State of New Jersey, New York and of the Commonwealth of Massachusetts.

# DEFENDANT CFA AND THE CFA BOARD A PLACE OF PUBLIC ACCOMMODATION

4.  The New Jersey Statute (LAD) effectuates this purpose without regard to an organization's viewpoint, "the focal point of its prohibition being rather on the act of discrimination against individuals in the provision of publicly available goods, privileges, and services." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston* 515 US at 572, 115 S.Ct. at 2347, 132 L.Ed.2d at 503 (recognizing that such laws "are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination"); see also *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 US at 549, 107 S.Ct. at 1948, 95 L.Ed.2d at 487 (up holding Minnesota's public accommodations law that made "no distinctions on the basis of the organization's viewpoint"). Like other similar statutes, the LAD serves a compelling state interest and "abridges no more speech or associational freedom then is necessary to accomplish that purpose." *Roberts v. Unites States Jaycees*, 468 US at 629, 104 S.Ct. at 3255, 82 L.Ed.2d at 478. The CFA is a place of public accommodation recognized as such in New Jersey and other jurisdictions. [I]f an organization "is not a 'place of public accommodation' because of its selective membership practices, it must be private as that term is used in the statute." In contrast, if an organization qualifies as a "place of public accommodation" … the "private" club exception … does not apply. *Clover Hill Swimming Club, Inc. Goldsboro*, 47 N.J. 25, 219 A.2d 161 (1966); *Brounstein v. American Cat Fanciers Ass'n*, 839 F. Supp. 1100, 1106 (D.N.J. 1993).

## FACTS

1.  Plaintiff is a third generation member in CFA following her Mother, and Grandfather who had been members since the 1950's. Plaintiff has been a member in good standing and a member of the Persian Breed Counsel Solid Color Division for many years. Plaintiff's name is registered as part owner of the Cattery name Silver Circle alone with her Grandfather and Grandmother and has received the volunteer recognition from CFA through its Cattery Environment Program as maintaining a Cattery of Excellence since 1997.

2.  Plaintiff had disclosed to Dent in1998 as defined by the Americans with Disabilities Act, and in 2004 in response to the CFA Protest appeal process she requested reasonable accommodations. Plaintiff's request for an extension of time to hear appeal as her disability (epilepsy and dyslexia that were currently incapacitating her due to excessive undue stresses that triggered harmful seizures) and that she requested to have her appeal heard in the near future possibly June 2005 was in reason and CFA has postponed many appeal hearings for greater lengths of time then the time Plaintiff proposed.

3.  In the spring of 2004 Plaintiff's physical condition was deteriorating and received medical advise to reduce stress. Richard Fraser, MD wrote an Affidavit recommending extensions of time to perform tasks, alleviation of deadlines and stress producing encounters to reduce Plaintiff's tendencies to have harmful seizures.

4.  In September 2004 the Commonwealth of Massachusetts determined Plaintiff disabled and that her disability prevented her from working.

4

5. Plaintiff sent numerous letters to Defendant requesting the abovementioned reasonable accommodations to no avail Plaintiff received no response to her requests made in May, June, July, August, September and October 2004.

6. On November 2nd 2004 Plaintiff received a facsimile of a letter dated November 1st, 2004 and allegedly sent on the same to her address in Cambridge, MA (Exhibit ). The letter stated exclusively that the CFA Board adopted the decision of the CFA Animal Welfare Committee to "permanently suspend" Plaintiff of her membership privileges and benefits.

7. Plaintiff to this date has never received a proper Notice of charges against her except that she had violated the CFA Constitution Provision XV 4(a) and (g).

8. On November 12th, 2004 Plaintiff sent a 'Request for Reconsideration' alternatively a 'Notice of Intent to Sue' (Exhibit ) regarding a reconsideration of Defendants actions to deny Plaintiff a reasonable accommodation, and for it's failure to properly give her Notice sending this directly via facsimile and mail to Defendants Dent at the CFA Office in New Jersey and Jacobberger at his law office in Minnesota, therein Plaintiff states she would file a law suit on November 26th, 2004 regarding the herein claims. As of the date of this Complaint's filing Defendant has failed to respond to said letter.

9. On or about November 20th, 2004 the Defendant published on its Official Internet site a statement to the effect that during the Executive Board meeting the Board decided to permanently suspended Plaintiff for violations to the CFA Constitution Provision XV 4 a, g.

HISTORICALLY THE FACTS ARE THAT:

10. On or about May 16th, 2003 CFA by its Executive Director, Dent temporarily suspended Plaintiff from all CFA Services and benefits and sent her notice thereof calling the notice a CFA Protest (Exhibit ).

11. The said CFA Protest (Form 7/5/00) **incomplete, unsigned** and **undated** alleging a violation of CFA Constitution Provision "XV 4a,g" (exclusively) as mentioned hereinabove.

12. On or about May 16th, 2003 CFA by its Executive Director, Dent assigned the said CFA Protest a docket number 03-026-0514 despite the CFA Policy the prohibited it from assigning a docket number to unsigned Protests.

12a. The said Protest named Complainant as "CFA Linda Berg Animal Welfare Comm. Chairperson" although no signature and/or initials are found on said Protest.

12b. The said Protest references Violation: CFA Constitution Provision XV 4 a, g and "see attachments" that were exclusively 5 personal emails, 10 web page and/or Internet variations on newspaper articles and 3 clipped newspaper articles nothing in those attachments is underlined, highlighted or expressly singled out.

12c. The said Protest includes instructions that it is CFA Policy that a unsigned protest will not be assigned a docket number and therefore rejected.

13. Both Dent and then Jacobberger instructed Plaintiff that 'the CFA Protest' must be answered and until the Board meets and decides Plaintiff will be "temporarily suspended" pending an

investigation of the CFA Committee on Animal Welfare hereinafter "Committee" and all her CFA services, memberships and benefits denied.

14. Plaintiff was told by Dent that all membership benefits, services and privileges were suspended except at any time if she would like to pay and maintain a subscription for the CFA Almanac that she could do so but that she was denied the opportunity to place her yearly full page add in the CFA Yearbook naming exclusively the Cattery Founder of Silver Circle Dr. A. Howard Erickson. The Yearbook is open to members and nonmembers alike and Dr. Erickson was not mentioned in said Protest.

15. Included with said Protest was a cover letter signed by Dent that reiterated Plaintiff as temporarily suspended together with a provisional statement regarding Plaintiff's rights to appeal the decision of the Committee who would make a decision following an investigation to recommendation a action to the CFA Board and Officers at the Executive Board meeting in Boston, MA on October 4-5th, 2003.

16. Plaintiff states this said CFA Protest deficient in information to give proper notice and is unconstitutionally vague and unfair as to proper notice. Plaintiff points to (Exhibit ) said Protest (See Part V. Facts and Evidence: 'State in full detail…' remains blank except for "See attached" possibly referring to the attachments 5 emails, and newspaper stories.

17. The said CFA Protest deficient and itself a violation CFA policies and procedures including that the protest remained UNSIGNED, UNATTESTED, UNSWORN (see under Part VI Oath or Affirmation "Unsigned protests will not be considered").

18. On June 16th, 2003 Plaintiff sent via Fed-Ex overnight a response (Exhibit ) claiming the lack of due notice not consistent with the CFA Constitution, the said Protest vague and unclear as to the charges, that the said Protest violated the CFA Constitution's own policies of due process and that it is unsigned therefore should not have been assigned a docket number. In addition Plaintiff requested of the Defendants to immediately complete the said Protest, and/or dismiss it. In addition the Plaintiff requested of the Defendants to immediately send to her a clear statement as to the charges and attested and/or sworn evidence thereof and to send to Plaintiff all CFA policies, and rules of the meetings, Appeals, bylaws, and a copy the "Constitution" and the same in effect during the year 2003 and again those in effect during the year 2004. In addition Plaintiff requested additional time to more fully respond. Defendants have NEVER responded to said requests.

19. On or about September 21st, 2003 Plaintiff spoke to Defendant Berg on the telephone and was informed by her that its investigation was over and that the Animal Welfare Committee member and CFA Board Member George Eigenhauser had made a decision to recommend "Permanent Suspension" of Plaintiff from membership in CFA "because of dead cats in the freezer", and would recommend permanent suspension on that reason.

20. Plaintiff states the reasons supporting Berg's recommend to permanent suspension not consistent with other decisions and recommendations on other CFA members with same violations. Plaintiff states that dead cats in freezers a common trade practice committed by more members then not and that CFA has no policy on the keeping of those cats to whom have passed away. The CFA policies reaches only the care and maintenance of live cats. A

decision contrary to this would result in the necessary language being amended and incorporated in to the CFA Constitution and notice given to Plaintiff of this new condition.

21. On October 4th & 5th, 2003 all the Defendants and the CFA Board meet in Boston, MA for a Board Meeting and Plaintiff attended both days from the beginning (9am) to the end (5pm) each day for the entire meeting. During that time the Board discussed the said Protest naming Plaintiff but refused to hear from Plaintiff and denied having nor could not demonstrate that the Board had any response sent to it on June 16th, 2003 by Plaintiff. On October 4th, 2003 the Defendants and the CFA Board while refusing to hear from Plaintiff determined to take the recommendations of the Committee and permanently suspend Plaintiff from all CFA Services and Membership.

22. On October 5th, 2003 Plaintiff hand delivered to each Defendant and the entire CFA Board including its attorney Defendant Jacobberger a Notice of Appeal from its decision to permanently suspend Plaintiff (Exhibit ) listing the multiple grounds for her Appeal from its arbitrary, capricious and unfair and unlawful decision to permanently suspend Plaintiff from membership in CFA.

23. In October 5th's notice Plaintiff again requested the CFA policies, rules and "Constitution".

24. On or about November 2003 Plaintiff received Notice from Defendant Jacobberger that her Notice of Appeal had been received and that $250.00 was now due to process the Appeal there was no rules, polices, or CFA Constitution in said mailing.

25. Immediately thereafter Plaintiff requested a waiver of the fees involved with the Appeal and another request for the rules, polices and CFA Constitution. Defendant Jacobberger sent a response to Plaintiff denying a waiver but promising to refund the Appeal fee if she was successful with her Appeal. In this said Jacobberger response (Exhibit ) there was no rules, polices or CFA Constitution.

26. In December 2003 Plaintiff had tendered to Defendants the entire $250.00 and informed Defendant's that she required the rules, polices and CFA Constitution pending a hearing on her appeal.

27. On or about December 2003 or January 2004 the Defendant Jacobberger responded to Plaintiff's tender of $250.00 by acknowledgement in writing including a date for her appeal fee had been received and a hearing would be set for possibly June 2004. This acknowledgement did not include the rules, polices and or CFA Constitution.

28. On or about May 2004 Plaintiff sent a request to CFA requesting a reasonable accommodation for an extension of time to hear her appeal due to a deterioration in her condition and as a reasonable accommodation for a disability she suffers (epilepsy) and that a result of the undue stresses could not foresee to be available to attend an appeal hearing until she could physically tolerate the stresses. In this request suggested a future date perhaps June 2005?.

29. CFA via Jacobberger responded that a continuance until October 2004 would be allowed under the normal procedures followed with appeals. This said notice again did not contain information as to those referred to procedures, rules, policies and/or CFA Constitution.

30. In June, July, August, September and October Plaintiff sent requests initially detailing that her disability was deteriorating and that she required an extension to hear her appeal until June 2005. In September and October 2004 Plaintiff sent the same request again but added that she now was on emergency aid due to increasingly deteriorating condition.

31. Because of the lack of response from CFA, Plaintiff called Defendant Dent on October 1st, 2005 requesting his response to her multiple requests for reasonable accommodation and Dents response was that "it is Jacobberger's job to answer your requests" and that he would personally fax the request to Jacobberger that morning.

32. In addition Plaintiff states that the actions and or inactions of the Defendants individually and collectively have been unfair, unjust and egregious in not all inclusive to the manner and notice that she was given as to allegations purporting to support a violation of the CFA Constitution but also by its total failure to respond to requests for proper notice and those requests for the rules, policies, procedures and the CFA Constitution.

33. In addition Plaintiff states that the actions, inactions and/or indifference of the Defendants individually and collectively to expel, exclude her of membership, benefits, services and privileges arbitrary, capricious, bias and unjustified.

34. Plaintiff states that the actions, inactions and or indifferences as mentioned hereinabove of the Defendants individually and collectively were knowingly done and were both negligently and maliciously committed.

35. The Defendants individually and collectively without right, without the due process of law, without policy and circumstance against the bylaws of the CFA Constitution, against the laws of the State of New Jersey, New York and of the Commonwealth of Massachusetts and those intentions of Congress meant to produce public scorn, completely ruin Plaintiff's reputation, defame her and deprive Plaintiff her rights protected thereunder and those by the Constitution of the United States.

36. By the actions and inactions as mentioned herein the Defendants and its agents, at all times material herein, knew and/or should have known that the charges against Plaintiff unsupported and vague, that the charges were frivolous, that the policy of CFA was compromised in its application to Plaintiff and that such a deprivation to be publicly stigmatizing, humiliating, to produce public scorn, in violation of Plaintiff's rights as a CFA member, and as a disabled citizen of the United States and those rights pursuant to the 1st and 14th amendment, to be wrong and to imply deference upon Plaintiff.

37. Plaintiff has suffered the loss of her reputation, member privileges, services, and benefits, public scorn, discrimination, physical and mental discomfort, been damaged by the actions and inactions directly, and indirectly caused by Defendants.

8

38. Damages are an appropriate and judicially manageable remedy for an discrimination, and harm to personal interests in liberty, for the case presents a focused remedial issue without difficult questions of causation and valuation, and there are no applicable special factors counseling hesitation in the absence of affirmative action by Congress.

39. The actions and inactions of Defendants and each of them personally and professionally participated in the discrimination, arbitrary, bias, capricious and unfair treatment of plaintiff but also set into motion a series of acts by others which they knew or reasonably should have known would cause others to inflict injury upon Plaintiff.

40. The actions of each Defendant violated Plaintiff's clearly established statutory and/or constitutional rights of which a reasonable person would have known.

41. The actions of each Defendant impeded and hindered the course of justice with the intent to deny Plaintiff the equal protection of the laws and equal protection of membership in CFA.

42. As a direct and proximate result of the outrageous and wrongful acts of each of the Defendants, Plaintiff suffered extreme indignities and humiliation, discrimination, severe emotional and physical distress, pain and suffering, mental anguish, loss of membership services, yearbook participation and loss of standing in the community with other CFA Members and has been held up to ridicule before her peers.

## PRAYER FOR RELIEF

1. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein as to each Count separately determined.

2. The Defendants and each of them individually and in collectively acted willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's CFA Constitutional rights under the bylaws, and those Statutes and both Legislative and Congressional intentions and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive and exemplary damages by way of punishing and deterring the Defendants in an amount of no less then 1 Million Dollars. ($1,000,000.00).

3. The actions of Defendants, jointly, and severally, entitle Plaintiff to an award of exemplary and punitive damages as to each Count separately determined.

4. As a further direct and proximate result of both the Defendants' intentional and negligent acts to inflict emotional distress and purposeful actions and inactions as mentioned in this Complaint, Plaintiff has incurred, and will continue to incur special damages. The full amount of such damage is not known to Plaintiff at this time and Plaintiff will seek leave to amend this Complaint, to state such amount when the same becomes known to Plaintiff, or according to proof at trial.

5. Plaintiff is informed and believes and thereon alleges that Plaintiff will continue to suffer extreme mental, physical and nervous pain and suffering in the future as a result of the injuries alleged herein this Complaint. The exact amount of damage is not known to Plaintiff at this time, and Plaintiff will move to amend this Complaint to state such amount when the same becomes know to Plaintiff or according to proof at trial.

## CLAIMS

### COUNT I

### DISCRIMINATION
### 42 USC 12101 ET SEQ.
### P.L. 101-336, 104 STAT. 328 (1992)

Upon the all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

### COUNT II-XIV

### DISCRIMINATION
### STATE STATUTUE(S)

(II-III) New Jersey Law Against Discrimination N.J.S.A. 10:5- 1 et seq. 10:5-12(f) ("LAD"), (IV) Massachusetts Declaration of Rights, (V) Massachusetts Civil Rights Act, (VI) Massachusetts Equal Rights Act and (VII) MGL Ch 151B, (VIII-IX) MGL CH 272 sec 92A, and 98 and/or (X) New York Antidiscrimination Law(s), (XI) Texas Antidiscrimination Law(s), (XII) California Antidiscrimination Law(s), (XIII-XIV) Minnesota Antidiscrimination Law(s) 2 counts for 2 Defendants.

Upon the all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

### COUNT XV

### UNFAIR PRACTICES

Upon the all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

### COUNT XVI

### DEPRIVATION OF 1st AMENDMENT RIGHTS OF FREE ASSOCIATION

Upon all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

### COUNT XVII

### DEPRIVATION OF DUE PROCESS

Upon all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

## COUNT XVIII

**DEPRIVATION OF EQUAL PROTECTION**
Upon all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

## COUNT XIX

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
Upon all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

## COUNT XX

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
Upon all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

## COUNT XXI

**TORTS: MALICIOUS ACTS**
Upon all Defendants
As set forth herein above paragraphs 1-42 and incorporated herein.

## COUNT XXII

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
Upon all Defendants
As set forth herein above paragraphs 1-42, incorporated herein and CFA registered purebred kittens and cats are considered more valuable then those registration by other agencies and CFA sponsored cat shows are considered more competitive then other agency shows therefore by the actions as put forth herein the loss of services diminishes the value of Persians breed and/or shown by Plaintiff's.    Plaintiff's lifelong membership and participation in CFA services is a benchmark in her hobby a trademark of her breeding program.  By the Defendants acts as herein claimed has totally reduced Plaintiff's future economic expectations, and important familial goals, and permanently stigmatizes and devalues all hobby or other breeding endeavors.

**PRAYER FOR RELIEF**
According to statute, as herein and any and all other relief deemed just and fair.

**DEMAND IS HEREBY MADE FOR A TRIAL BY JURY**

Heidi K. Erickson, *pro se*
November 30th, 2004

By signature hereinabove I attest that the information herein is true under the pains and penalties of perjury.

Today I hereby cause a copy of this Complaint to be mailed by US Postage Paid First Class to all Defendants in care of Thomas Dent at CFA Central Office in New Jersey at 1805 Atlantic Avenue, Manasquan, NJ 08736 and to Fred Jacobberger at 2701 Overlook Drive, Bloomington, MN 55420.

11